UNITED STATES FIDELITY & GUARANTY COMPANY, APPELLANT, v. MISSOURI VALLEY CONSTRUCTION COMPANY, APPELLEE.

139 N. W. 2d 222

Filed January 4, 1966.    No. 36037.

H. L. Blackledge, for appellant.

Tye, Worlock, Knapp & Tye, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BOSLAUGH, J.

This is an action by the United States Fidelity & Guaranty Company as plaintiff against Missouri Valley Con-

struction Company to recover the amounts paid by the plaintiff to the executor of the estate of Nicholas J. W. Shada under the Workmen's Compensation Act. The plaintiff is the insurance carrier for Carl Whitney. Shada died as the result of injuries sustained in an accident on October 21, 1958, while employed by Whitney. Whitney's liability to the executor of Shada's estate was established in a previous action in which both Whitney and the defendant were parties. See Shada v. Whitney, 172 Neb. 220, 109 N. W. 2d 167.

The petition in this action alleged that the defendant and Whitney had entered into a contract by which Whitney agreed to furnish gravel trucks and drivers to the defendant; that the contract provided that the defendant " 'will hire and furnish the drivers of said trucks and will pay the wages of such drivers, including any employer's contributions required by law' "; and that the plaintiff as subrogee of Whitney was entitled to reimbursement from the defendant for the amounts paid for the death of Shada under the Workmen's Compensation Act.

The answer alleged that the contract referred to in the petition was never executed but was disregarded by agreement of the parties; that the defendant did not hire Shada; and that the judgment in the previous action was res judicata.

In the district court a jury was waived and the action tried to the court. The district court found generally for the defendant and dismissed the action. The plaintiff's motion for new trial was overruled and it has appealed.

The question presented by the appeal is whether the evidence is sufficient to support the decision and judgment of the district court.

The plaintiff's theory of the case is that the truck rental agreement is controlling. The plaintiff contends that the provision in the truck rental agreement that the defendant would hire the drivers and pay their

wages, including any employer's contribution required by law, made the defendant liable to Whitney for any compensation paid by Whitney to a driver as a result of an accident while hauling gravel on the defendant's job. The plaintiff contends that it is entitled to judgment as a matter of law.

There is very little conflict in the evidence. The record shows that Whitney had agreed to furnish gravel trucks with drivers to the defendant. A truck rental agreement was signed on Saturday, October 18, 1958, by Clifford Murrish, a foreman representing Whitney, and Wayne Nelson, a foreman representing the defendant. The work was then in progress and Whitney's trucks had been on the defendant's job for several days.

The truck rental agreement provided that Whitney would furnish trucks; that the defendant would pay "R. C. Rates"; that the defendant would have exclusive control and supervision over the trucks and drivers at all times; that the defendant would hire and furnish the drivers of the trucks and pay the wages of the drivers, including any employer's contributions required by law; and that the defendant would provide its own public liability and property damage coverage but was under no obligation to provide any insurance coverage for Whitney. Under "Other provisions" the contract stated: "Addendum #1."

Although the truck rental agreement provided that Whitney would furnish the trucks and the defendant would hire the drivers, the defendant intended to use Whitney's drivers to operate the trucks. In order to carry Whitney's drivers on the defendant's payroll it would have been necessary for the defendant to obtain information concerning the age of each driver, his dependents, social security number, and home address. This information was never furnished to the defendant by Whitney.

Although the truck rental agreement provided that the defendant would hire the drivers, the defendant had

agreed to pay "R. C. Rates." An R. C. rate is a railway commission rate for hauling material on a yard-mile basis. In order to operate under the truck rental agreement at R. C. rates it would have been necessary for the defendant to deduct the wages paid to the drivers from the amount due Whitney as computed under the R. C. rate. The "Addendum #1" referred to in the truck rental agreement was an authorization to the defendant to deduct "all wages, including employer's contributions required by law" paid to the drivers from the rental computed at the fully operated R. C. rate. The addendum No. 1 was never signed or furnished to the defendant.

Murrish and Nelson discussed the matter of how the drivers would be paid. Nelson advised Murrish that the defendant would pay drivers only for actual hauling. It was Whitney's custom to pay his drivers for all of the time that they worked including time spent in repairing and servicing the trucks and moving on and off the job. Murrish and Nelson agreed that the drivers would remain on Whitney's payroll and thus avoid the necessity of dividing the drivers' time, keeping duplicate time records, and making two payrolls. This agreement was followed. The defendant kept no record of the drivers' time and did not pay any of Whitney's drivers. Whitney paid his drivers as usual. The defendant paid Whitney on the basis of R. C. rates without any deduction for wages paid to drivers.

The evidence also shows that Whitney retained control over the trucks and drivers while they were hauling gravel for the defendant. Whitney retained the right to hire and fire the drivers, lay them off, or assign them to another job. On one occasion the trucks were used by Whitney to haul equipment to Palisade, Nebraska, on another job. The only supervision of the operation of the trucks by the defendant related to the time when hauling was to begin and stop, where the gravel was to be hauled, and general supervision of safety on the job.

The plaintiff's theory is that the drivers were really employees of the defendant; that Whitney paid their wages as a convenience to the defendant; and that the contract between Whitney and the defendant was an agreement on the part of the defendant to assume all of the liabilities of an employer to the drivers. The evidence does not support this theory.

The truck rental agreement in its original form remained executory, was never completed, and was never performed by either party. The agreement that was performed by the parties was a modification of it. Under the agreement as modified, the defendant did not hire the drivers, pay them, or maintain exclusive control and direction over them. The drivers remained in the employ of Whitney and were never hired by the defendant or paid by the defendant. This court reached a similar conclusion in the previous action. Shada v. Whitney, *supra*.

The terms of a written contract may be changed by a subsequent parol agreement of the parties at any time before breach. Bowman v. Wright, 65 Neb. 661, 91 N. W. 580; Wolf v. Tastee Freez Corp., 172 Neb. 430, 109 N. W. 2d 733. The evidence in this case shows the modification of a written contract by a subsequent oral agreement.

The record fully supports the decision and judgment of the district court which is affirmed.

AFFIRMED.